0-3435 from the District of Western Missouri, City Union Mission, v. Sheriff Mike Sharp et al. Alright, Mr. Whitehead, you may begin when you're ready. Jonathan Whitehead for Plaintiff's City Union Mission, and may it please the Court. The City Union Mission is a Christian homeless ministry in Kansas City, Missouri, and the mission needs relief from Jackson County Sheriff Department's actions taken under color of law that have violated the mission's federal rights. The action has been a policy or custom of arresting, prosecuting, sweeping, harassing, threatening prosecution of the mission, its guests, its employees, and even the corporation itself. Counsel, may I ask Judge Kobus here, I mean, what is the action you're seeking relief from at this point? And as I understand it, almost everyone agrees that the sheriff misinterpreted the statute, and that this does not apply to the individuals who were swept up by the sheriff in this case. So what are you seeking relief from? Well, several things, Judge Kobus. One, obviously the mission can't use its property. It can't extend the invitation because the people it would like to invite have been told by parole officers they can't be there. But do you agree that the state would suggest that they can be there? At this point, no. Well, the state does. The county does not. The county says they cannot be there. The state agrees with our interpretation of the statute. The county disagrees with our interpretation of the statute. Just to be clear, the county is continuing to seek to enforce their prior interpretation of the statute. Your Honor, in the brief, it says Jackson County says the mission is still providing cover for a violation of Missouri law. Which doesn't just prevent individuals from coming, but it causes the mission to suspect it may be prosecuted for aiding and abetting. Because the statute says if the directors or officers allow someone to break the law at our property, we could be violating criminal law. So the mission needs not just interlocutory statements, but a declaration of relief that stops the sheriff and the county from enforcing what we believe is an interpretation beyond the text of the statute. I thought the prosecutor said there would be no prosecution. The county prosecutor has said their office will not prosecute these cases because they believe the statute is unconstitutional. The testimony by the sheriff's office was they went to the municipal prosecutor and used a municipal statute in the county court, the municipal county court, so they went around the county prosecutor's office and have still been prosecuting these cases. When you say they've still been prosecuting, can you be specific? Who's been prosecuted for what and when? Under the sweeps that were mentioned here, the sheriff came in, did a sweep of the facility, picked up at least two or three folks. But that was the genesis of the case, right? In the interim, what's been happening in the last several months? In the last several months, we have been told that parole officers for employees and guests have told those individuals, you can't go there. We can't authorize you to go there. Is that in the record? It's not in the record because we haven't done discovery. But certainly we can plead that if that's what it comes to. But when the county admits in the record that we are covering for a violation of Missouri law, it's clear that they think we're doing something wrong. And so we cannot use our property or our facilities with these guests or with these individuals. So the county's prosecution of those individuals under the code, under the municipal code, already occurred. We understand there's been a temporary pause in enforcement at our location only. But the word we are getting, and it's again not in the record. Wait a minute, there's been a temporary pause, you suggest that? Correct. The sheriff's office has said we're not going to enforce this at this particular location until there's a resolution. While there's a court case pending, there's not going to be a resolution. But the testimony from the officers, the sheriff's deputy was, we can go back to that old policy at any time. And obviously, depending on the way the court resolves the question about the statute, if there's no rule preventing them from continuing in this policy, our expectation is they'll continue in this policy. As I think everyone understands, the statute at issue says, a certain affected person shall not knowingly be present or loiter within 500 feet of any real property comprising a park. And the mission is not in a park. Its guests and employees are not loitering in a park. But the county says the statute applies to both those persons and the mission's property. The directive was the mission's property is, quote, still off limits, close quote. And that was the current directive. Even in the briefs here, Jackson County says the mission is providing cover for violations of the law. So the mission needs relief beyond the interlocutory order from these arrests, prosecutions, sweep, harassment, threats of prosecution. Because without relief, it cannot continue its ministry to the needy in Kansas City, regardless of their background. The mission has alleged the Sheriff's Department policy and acts would violate the law in many different ways. And if we have any regrets, perhaps that we've tried to show the law violated, or this policy violated the law 12 ways to Sunday. And we pleaded 13 counts. But broadly, the mission believes at least one of the following has to be true under the law. One, the Sheriff's policy about the law is just wrong because the plain text of the law does not apply to the mission. Second, somehow the text of the law could reach the mission. If that were possible, it would still be unconstitutional to apply it to the mission under these circumstances, its employees, activities, and guests. Or third, there really is no set of circumstances in which this law is sufficiently clear, or else it captures so much protected First Amendment activity that the law should be struck down entirely. Counsel, Judge Kobus again, what is the injunction you're looking for here? What would it say? What would it say? It would look remarkably like, I think, the injunction the court granted against Sheriff Sharpe early on, which said the court granted a temporary injunction that would prohibit the sheriff individually from seeking to enforce 566150 in a manner inconsistent with the plain statutory language. And the court had already laid that out. So what we need is an injunction against this policy and interpretation where the sheriff can come in and apply this law to the guests and activities of the mission. That's the injunction and declaration that the mission needs, in addition to fees and costs. What's the basis of your facial claim? Is it that the statute is vague? Both it's vague and overbroad. This is a naked loitering statute. Missouri has struck down its prior naked loitering statutes where there's loitering with no definition of loitering. And this is such a statute. And so under Missouri law, the courts have not provided any limiting instruction concerning the word loitering. The state has suggested that it means, I believe, dwaddling. But even dwaddling encompasses First Amendment protected activity. And so the statute is either vague or overbroad. It's overbroad because the statute doesn't provide clarity about when. But you'd be happy with an injunction that you just referenced? Certainly that would be the minimal ground. I think it's more efficient to go ahead and rule on the statutory propriety. But certainly the narrowest ground is to send it back down with instructions to enter an injunction and award costs and fees. I don't want to waste the court's time going through the analysis as to how we get there. Obviously, we believe the core case is a violation of 42 U.S.C. 1983. That has two elements. A person acting under color of state law who violates a right secured by the Constitution or laws of the United States. And then, of course, that's read through ICBAL. And we believe we satisfied all those elements. First, the county is a person that could be liable under Monell. It, too, has adopted under color of law a policy that requires or allows law enforcement to interpret 566-150 to ban affected persons from the mission's properties. Counsel, let me ask you that. Has the sheriff's office actually incorporated that policy or adopted that policy? I thought I heard you earlier say they might. The stipulation is that the sheriff adopted a policy that said the mission's property... But he's gone, right? He's gone. The sheriff's office has continued to have that policy. That the mission's property is off limits. The sheriff issued that declaration, but that was reaffirmed by the deputies later. That that policy is still the current understanding of the law by the department. They're simply not enforcing it. They've put it on temporary hold until the court resolves the meaning of the statute, is our understanding. But at this point, they intend to enforce it. And they, again, outside the record, have told employees and guests they can't be there. And if they are there, once the court resolves this, they will be under penalty. They'll be violated in terms of their probation. And obviously that could result in serious consequences for folks that are already under pretty serious penalties. So that's... Not only has the sheriff set the policy, the policy has survived, we believe, to become a custom. So whether the question is, is it a policy or is it a custom under 1983? We believe it's probably both. We've sent warning and asked them to change course. The sheriff said, we're not going to change course. The sheriff's deputies have said, we'll wait and see what the court says, but we're still not changing course. And what we're left with is an interlocutory order from every court and the agreement of the state that the law shouldn't apply here. But we have no order that says it doesn't. And so that's what the City Union Mission is requesting in this case. Council, what's the... What's your best case that this is a cognizable action to get some kind of an advisory order in the form of an injunction that particular activity does not violate the law? Is that up to you, your... No, your honor, I think we have standing two ways. First, we have, of course, first party standing because we are alleging an intention to engage in a course of conduct and we're alleging that the policy has caused us to change course. So there has to be an allegation of intention to engage in conduct. There exists a credible threat of prosecution there under. And we have self-censored or altered our First Amendment conduct. And so under Babbitt or 281 Care Commission in the briefs, we believe the mission has first party standing because the policy has caused us to go out of our way. But clearly the threat from the county that we're providing cover for violations of the law implicates us in criminal violations. And so we don't believe it's merely advisory. But secondly, even if it were... Counsel, what if a convicted sex offender, as defined in the statute, is loitering on the premises of your facility within 500 feet of the park? That's loitering on the county's property, or pardon me, on the mission's property? No, on your property. Without the invitation of the mission? Correct. Then they would not be an invitee or guest subject to the prohibition. That's correct. If they're loitering outside the mission, then there's no question. But the question is does it apply to the mission's guest? I don't really understand what kind of order really would be appropriate here or that you're seeking that would make some kind of, gosh, advisory, would predict possible factual scenarios? Well, Your Honor, I think the order would say this policy of the sheriff is improper and the reading of the law is as the court has laid out and that it doesn't apply to the mission and its guests and people while they are in activities at the mission. Didn't your concession just undermine your facial claim? I mean, you just indicated that if someone was there and not invited by the mission on mission property, that that would be a violation of the statute. Is that correct? That should be. Let's say you've got three or four guys out behind the mission smoking. Someone who's not going to the mission stops by, loiters around and is hanging around. The playground. That undermines your complete facial attack, does it not? Let me clarify that then. I agree that would be outside the relief the mission is asking and possibly under the language of the statute. I would still agree. Well, but you're seeking for it to be facially unconstitutional, right? That's one of the relief. You just told me a situation that it's constitutional. I don't believe it would be constitutional. It would be outside the relief we've requested for an injunction. Well, but you're arguing for us to strike it down on a facial basis. If an injunction is not granted, that's correct. Well, if it's constitutional as to your hypothetical individual, are our hands tied on a facial challenge? No, Your Honor. I'm obviously not communicating clearly. Well, I may not be listening clearly. So the mission has asked, A, we believe we should give an injunction that would apply to our property missions and the folks involved in our activities. Understood. So Judge Shepard is asking a question about, well, what if they're outside the mission? We say, well, that's really not what the injunction is we're asking for. My question was, they're at the mission. They're on the mission's property, but not an invitee, not a guest of the mission involved in our activities, but they're at the mission on the street corner loitering. Which is my hypothetical. So that's outside the injunction we've requested. Under the facial analysis, they would be loitering, so clearly the statute reaches them. But in that case, I believe that would be an unconstitutional application because the statute reaching any old loitering at the mission for a person outside the injunction we've requested, I think that would still be unconstitutional. Well, I thought you just said that that loiterer would be subject to the statute. Or did I misunderstand that? It obviously falls within the text of the statute, but the text of the statute is overbroad and vague. So, if a man is standing on the street loitering with no apparent purpose or dwaddling as the state would say, we agree that would be outside the injunctive relief requested by the mission. Because we don't have a claim about somebody who's not our invitee. But if a person is loitering on the street and the sheriff tries to apply this statute, we still believe the statute is too broad because loitering is overbroad and vague as to where and why the limits apply. I see I'm out of time. So, it sounds to me like you want an injunction  unless your client is guilty. No, I don't understand any circumstances in which the mission's activities could be seen as loitering. Well, I thought your concern was that there was going to be some kind of aiding and abetting theory applied against the mission. Well, yes. I mean, I think that certainly could come back to the mission is that if the mission... Yeah, so it sounds to me like you want an injunction barring prosecution of the mission unless the mission is guilty. The mission should not be prosecuted for a statute that criminalizes loitering without a definition outside the mission. I think that's correct. Okay. All right. Well, now that we hear from the appellees, counsel, help me with your name. Deal? Deal. Yes. Thank you. You may proceed. Thank you. May it please the court. By the way, all right. You've got 10 minutes, I see, on the clock. So, go ahead. Okay. Thank you very much. May it please the court. I would like to address first the argument that was raised earlier about the injunctive relief. And insofar as if there is currently a policy in place for prosecuting people who are at City Union Mission. And that is no. Well, that's not quite what counsel said. Counsel said that there wouldn't necessarily be prosecutions, but that the Sheriff's Department continued in their belief that the law applied to the mission. And that absent action by this court, that the prosecutions would continue on a municipal side. Is that accurate? That is not accurate. Not to waive attorney-client privilege, but we have not been doing that for as long as I have been here, which had, I came after Sheriff Sharp left office, but there is no risk of prosecution or enforcement from the Sheriff's office at this time. And I would believe that Mr. Whitehead was talking about depositions that he conducted many years ago for this case. And then so far as my brief, it states that it is a cover for violating Missouri law. The issue that I was trying to address in that particular argument was that since this is an appeal from a motion to dismiss, given how Sheriff Sharp interpreted the law at the time, that would have been a cover for that. But at this point, there is no threat of prosecution as Mr. Whitehead's brief had been pointed out. So does the county concede that the state's interpretation of the statute is legally correct? I would concede that unless it is appealed differently. As it stands, I believe that Judge Wyme's interpretation with the last antecedent rule is what we have been abiding by for our... So is the district court's order controlling on the county in your view? It is. I would say so. I would, though, point out that, and maybe this will add not a whole lot of support to my argument, but there are very scant cases on point that interpret this statute, this criminal statute, and... I don't think that's helping your position, at least not with me. I mean, the question is simple. Do you accede to the district court's interpretation? Because if you don't, counsel spent several minutes explaining why that's problematic. If the county does, that at least potentially resolves all of those issues. Potentially. Yes. So I will concede that that shall control what we do in this county. I would say that as far as my motion to dismiss or the motions to dismiss that were granted, I think that presents a defense for the sheriff's interpretation, the previous cases. I understand. Okay. Thank you. Yes. Thank you. And so there is no threat of prosecution right now for this particular being non-loitering within 500 feet of a park with playground equipment in this county. However, as far as the granting of the motion to dismiss that occurred in this case, we would ask that this court uphold Judge Wyme's determination and to dismiss all of the counts against us. The last count that survived the motion to dismiss was one on a motion for summary judgment where former Sheriff Sharp was sued in his individual capacity for enforcement of this particular statute. And I would like to address that since that is something that counsel addressed in their briefing and asked this court to overturn that issue. So the district court found that Sheriff Sharp had qualified immunity for his actions in enforcing that statute. And in order for qualified immunity to be overcome, there has to be two prongs met. First, do the facts alleged show that conduct violated constitutional right and was that right clearly established? And here in the briefing that we saw from appellant, he talked in broad generalizations about that no one should be able to interfere with one's right to freely exercise their religion, but there is no case on point that specifically addresses if somebody has a particular right to worship within 500 feet of a park with playground equipment or things along those lines. So I would ask that the court also uphold that grant of summary judgment in our favor. And if there are no other questions, then I could bring this to Mr. Johnson. Ms. Dino-Lynn, is it your position that, I take it from Mr. Whitehead's argument, that the mission is sitting under sort of the proverbial sort of Danakles, but your answer is no big deal, no threat of harm in the future? No threat of any prosecution? No, I would say that our interpretation of, we are following the interpretation of the law that Judge Wimes put forth, and for that reason, we have authority that this is not a violation of the law right now, and so we would ask that we be entrusted to follow the law. One would hope that, but I mean, I guess in all cases. In other words, the mission isn't for another, using another literary, the mission isn't going to have to run the gauntlet of assaults by the county officials or the city officials? No.  All right, Ms. Dino-Lynn, thank you for your argument. That brings us to Mr. Johnson. Mr. Johnson? Yes, sir. You may proceed. Thank you, Your Honor, and may it please the court, Jeff Johnson for the state of Missouri. Missouri has intervened for the limited purpose of defending the constitutionality of Section 566.150 and has not otherwise waived its sovereign immunity in this case. The district court correctly found that Section 566.150 prohibited persons previously convicted of certain sexual offenses from knowingly being present in a park or loitering within 500 feet of a park. The district court did so by applying ordinary tools of statutory interpretation, including the plain language and the lasting decedent rule, and found that, as the city union mission and the state agree, that as applied, attending worship services or providing worship services within their building is not loitering under statute. I want to quickly go to a couple of issues that were raised by council as to whether or not they have a possible case for a facial challenge. I think council has conceded that they do not. At various points during questions from Judge Kobus, he stated that if they're loitering outside the mission, then there's no question that the law applies. I think he also said it another time, but essentially, if you are outside of the mission, and you are not an invited guest, the law clearly has purchased on a certain subclass of sexual offenders. Furthermore, we should note that this is not a naked loitering statute that the city's mission says. It applies to the merits of the people, and it also does not criminalize presence outside of the park. It criminalizes loitering, which under the dictionary definition terms, means to dawdle, to linger, to forcefully or fitfully decide not to move forward. So, here what we have is that... Counsel, Judge Kobus here. How do you get around the Papa Christo case that loitering bans generally are unconstitutionally banned? You're getting to this issue, and maybe you just did, but what is it specifically that makes this loitering ban constitutional? Sure, so this loitering ban, first, doesn't apply to the general public like the ones in Papa Christo v. City of Jacksonville. But didn't Morales apply to a certain subset of gang members? But in City of Chicago v. Morales, the distinction there is that the law had four different steps. The first step was that there had to be one or more criminal members basically hanging about on a street corner that an officer would have had to have given them the direction to then leave, and then that direction applied to everyone that was on the street corner, not just the two criminal members that were supposedly marking their territory. Here, we have a much more narrowly tailored statute that only applies to certain people who are previously convicted of certain sexual offenses. It does not apply if their friend is standing next to them, and also the other issue here is that in City of Chicago v. Morales, what they said is that the statutory definition for loitering was to remain in with no apparent purpose. But here, we don't have that. We have just the general term of loitering, and as I understand the City Union Mission's sort of facial challenge on this aspect, they say that, well, because it's undefined, we don't know what it means, and therefore we can't conform our conduct to it. But that's not how courts and how regular people interpret statutes. You go to the dictionary definition, you look it up, and so here... Well, what is the difference between dawdling and remaining without a purpose? Well, so the issue in City of Morales isn't necessarily that there's a different definition between remaining without a purpose and dawdling. The issue in City of Morales is that it said that there was some loitering that was acceptable and that loitering without a purpose was not acceptable, and that in City of Chicago, the only part of Justice Dugan's opinion that is actually the opinion of the court is Section 5, and that's the section that says that the broad sweep of the statute lets the officers decide what they could, you know, who was remaining without a purpose and who was otherwise constitutionally loitering, and that therefore the state had given no discretion or no direction to the officers as to how to apply the difference between loitering and remaining without a purpose. But here, we just have a statute that removes the discretion from police officers, and they say that if you're a certain sexual offender and you're loitering within 500 feet of the park, then you are obviously within the bounds of the statute as Mr. White had previously admitted. So, counsel, question. So, do I understand the position of the state of Missouri to be, from what you've said, that there is no credible threat to the mission of prosecution under this statute? Yeah, that's right. Properly interpreted, the statute does not apply to the city missions, invited guests, or providing of religious services, or to their employees that are working. Because when you are working, you know, for a church or for a shelter, then you are not dawdling or lingering. And that's what Judge Weinfeld, and that's what this court should affirm. I also want to note a couple of procedural issues that have come up in this case, which is that suddenly we now have an over-breath challenge that was not seated below. And if you look at the complaint, it mentions speech exactly one time when it quotes the full entirety of the First Amendment. That is simply not enough to make a free speech challenge. Over-breath only applies to free speech cases. Despite their citations to Employment Division v. Smith and Laurie v. Maynard and other ones, those are cases where there are hybrid rights where you are alleging compelled speech that then violates your religious objections. That is not the case here. They are not being compelled to speak. There is no speech claim here. We have also noted that none of these arguments came up in their opening brief. The court should apply its well-founded doctrines of waiver for issues that are not raised in the brief and also issues that are not seated. Which is the other issue that when the court looks at the case, there is a large mismatch between what the pleadings are and what the case is now. And then lastly, the submission also claims in its speech and over-breath issue that NWCP v. Button, Thornhill v. Alabama, and Keishon v. Board of Regents of SUNY somehow let them go forward with this. But all of those cases involve, essentially, political expression. Thornhill involved a criminal conviction for labor picketing. Keishon involved teachers to teach for failing to certify that they had an advocate to be over for the government. And Button, of course, involves a solicitation for legal help. It was recognized as verbal expression. Each plaintiff there alleged the law burdened their own conduct, unlike City Union Mission here, which is saying that the law is actually burdening other people's speech, should they be in the park or otherwise. With that, the jury would have to confirm Judge Lyons' reading of the opinion and oppose the law. Thank you, counsel. And let's see. Mr. Whitehead, I believe your time has expired. Take a minute and let you respond. Thank you, Your Honor. I guess the key issue I want to respond to, of course, is that this is a pleading standard case. And so the question on pleading, the summary judgment will be, has the mission pled a case? It's really the mission has pled that it has a credible fear of prosecution. To the extent the county now, in its representations, claims that it is currently bound by the court's order, we believe that will go away at the end of this case. But even if the state voluntarily ceases this policy of enforcement under Trinity Lewis, the question is not have they ceased, but whether it's difficult or impossible for them to go back to this policy. So, counsel, what's the injunction supposed to say? We understand you're not violating the law, but please don't do it in the future if you change your mind. We would like a declaration that the court's interpretation of the law. A declaration, though. I thought you were asking for an injunction. The injunction has to say, here's the interpretation of the law, and the sheriff is enjoined from applying the law in a different way to City Union Mission. So, the injunction would protect the City Union Mission, its guests and employees, from arrest while they're engaged in activities at the City Union Mission under this law. And then arrest. Isn't that, is the threat more theoretical than plausible? Or even possible? No, your honor. Is it sort of a quixotic journey to slay giants that may not exist? Well, your honor, if we were just looking through the rule book and looking for a statute to challenge, I would agree it would be quixotic. But in this case, people have been arrested, our facilities have been opened to sweeps that have disrupted the facilities, we've tried to negotiate and reach some understanding that it won't apply, and we've been unable to secure an agreement that it won't be enforced improperly at our location, so we don't believe it's quixotic when the state, even at this late date, in its briefs, says we are providing a cover for violation of Missouri law. That interferes with our First Amendment rights in the way we operate the mission and its facilities. There we go. Thank you, counsel, for your arguments. The case is submitted and the court will render a decision in due course.